## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Amy and Randall Schneider,

                Plaintiffs,

        vs.                                    2:20-cv-02162-JAR-GEB

US Bank, N.A. and Western Union Financial Services, Inc.,
                Defendants.

_____

## FIRST AMENDED COMPLAINT

**COME NOW**, the Plaintiffs, by and through their attorney, Donna L. Huffman, with their Amended Complaint for declaratory relief and damages.

## JURISDICTION

1. Amy and Randall Schneider applied for their home loan under the Kansas Mortgage Business Act which resulted in a loan closing secured by their Nortonville Kansas home loan at Kansas Secured Title on August 2, 2010 which then named US Bank, N.A. as the Lender.

2. U.S. Bank services, and has always serviced the Schneiders' real estate loan secured by their real property, address omitted for security, last 5 of the account as 18978.

3. Prior to instituting suit, the Schneiders reached out to US Bank with a pre-suit letter requesting correction of their mortgaging servicing issues and rate.

4. After no response, undersigned Counsel reached out and was advised that U.S. Bank had no intention of responding which left this suit as the Plaintiffs' only remedy.

5. On February 14, 2020, the Schneiders filed their action against U.S. Bank in Kansas State Court.

6. On March 30, 2020 U.S. Bank, N.A. removed the case to the United States District Court for the District of Kansas.

## FACTS

7.     The facts alleged are intended to be applied throughout the Amended Complaint in total, as if they were each in every preceding and subsequent Count without regard to the placement within the pleading.

8.     The Mortgage contract is titled "Kansas Single Family- Fannie Mae/Freddie Mac Uniform Instrument".[1]

9.     The Mortgage contract governing this transaction is standardized instrument, marked as VMP Form 0317 1/01.[2]

10.    The Mortgage contract is expressly governed by federal law and the law of the jurisdiction in which the Property is located pursuant §16.

11.    Paragraph 2 of the Mortgage contract sets out the "Application of Payments or Proceeds" which expressly includes the following:

> "Except otherwise described in this Section 2, all payments accepted and applied by the Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to other amounts due under this Security Instrument, and third to reduce the principal of the Note."

## COUNT I[3]

### CAUSE OF ACTION FOR USURY
### Violations of K.S.A. 16-207(b)

12.    Beginning on July 1, 1999, Mortgage loan rates in Kansas were subject to a maximum rate of interest calculated by formula and published by the Kansas Secretary of State.

13.    Pursuant K.S.A. 16-207(b) on the date of the mortgage and more than a decade preceding,"[t]he maximum rate of interest per annum for notes secured by all real estate mortgages and contracts for deed to real estate

---

[1] Preprinted and found on the bottom of each page of the Mortgage contract.
[2] Preprinted and found on the bottom of each page of the Mortgage contract.
[3] This Count applies to Defendant U.S. Bank

> executed on or after the effective date of this act shall be at an amount equal to 1½ percentage points above the yield of thirty-year fixed rate conventional home mortgages committed for delivery within 61 to 90 days accepted under the federal home loan mortgage corporation's daily offerings for sale on the last day on which commitments for such mortgages were received in the preceding month unless otherwise specifically authorized by law. Such interest rate shall be computed for each calendar month and be effective on the first day thereof. The secretary of state shall publish notice of such maximum interest rate not later than the second issue of the Kansas register published each month. The initial rate of interest upon any conventional loan evidenced by a note secured by a real estate mortgage shall not exceed the rate quoted in the application executed by the borrower on the day on which application for such conventional loan is made

14. On the date of the Mortgage loan secured by the Schneiders' Nortonville Kansas real estate, the maximum rate of interest was 5.58%. (Kansas Secretary of State Usury Chart Attached)

15. U.S. Bank exceeded the legal rate of interest contracting at 6.1% which resulted in usury interests' rates in the amount of more than ½ of a percent, specifically .52% over the legal limit of 5.58%.

16. The Mortgage contract is a continuing contract which matures on August 6, 2040.

17. The Schneiders are entitled to a lower interest rate for the remainder of the contract and a refund of overcharged interest for the 5 years preceding February 14, 2020 and other damages including attorney fees, expenses, and costs of the action.[4]

## COUNT 2[5]

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### TITLE 15 Chapter 41, Consumer Credit Protection

18. Upon information and belief formed after a deposition of U.S. Bank in July 2018,

---

[4] The act of collecting usurious interest is cross pled under the KCPA for each occurrence for 36 months prior to filing the initial suit and continuing.

[5] Applied to both Defendants, Western Union Financial Services Inc. as joint liability and in the alternative that US Bank no longer owns the Schneider loan and is a debt collector for another owner and/or failed to provide a transfer of servicing notice regarding Western Union.

Western Union Financial Services, Inc. (WU) is the actual servicer of the Schneider loan.

19.     When making an online payment, borrowers must leave the U.S. Bank site and are directed to the true debt collector's site which is WU or another concealed entity.

20.     The Schneider debt agreement does not authorize charges for paying the payments by computer, by phone, for servicing the loan, or time speaking to a customer service representative.[6]

21.     WU violated 15 U.S.C.A. § 1692f(1) when collecting *any* fees and charges to make payments by phone for $11.00 or other amounts, which are not expressly authorized in the debt agreement. Used to pay for time to speak to representatives which is not authorized in the debt agreement.

22.     US Bank violated 15 U.S.C.A. § 1692f(1) when collecting *any* fees for payment on line when charging $5.00 which is not expressly authorized in the debt agreement.[7]

23.     US Bank violated 15 U.S.C.A. § 1692f(1) when collecting *any amount of* interest in excess of the debt agreement rate by any act that has increased the collection of interest, for example; failing to post payments properly, posting extra principal payments late or by a future month, and using funds for fees rather than extra principal which increases interest.[8]

## False & Misleading Statements

24.     Debt collectors may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

---

[6] Cross applied to the KCPA as overreaching and overcharges.
[7] Conduct is cross pled as Deceptive Acts and Practices under the KCPA for 36 months and continuing in nature.
[8] Conduct is cross pled as KCPA relating to pecuniary damages for each of the 36 months preceding 2-14-19 and continuing in nature.

4

25. Western Union, when concealing their identity and the scope of the relationship including the amount of purported costs for pay by phone and on line payments which were shared and or kicked back for other purposes to U.S. Bank made false and misleading statements.

26. WU violated 15 U.S.C.A. § 1692e(2)(A) when making false representations relating to the character and amount of the debt when, for example, stating an inflated total amount due each month because of confusing suspense accounting which resulted in late posting and interest in excess of the legal rate.[9]

27. WU violated 15 U.S.C.A. § 1692e (2)(B) when making false representations of services being rendered relating to compensation of pay by phones and on line payment charges as if it were receiving the amount and that the charges were lawful yet was actually inflating the amount to provide fee sharing for U.S. Bank.[10]

28. Despite clear warning from the Consumer Financial Protection Bureau, U.S. Bank continues to engage in overreaching practices for the purpose of greed and an effort to coerce borrowers to move their banking accounts[11] to U.S. Bank for more control over Plaintiffs funds.[12]

**COUNT 3**
**Violation of 12 C.F.R. 1024.14 & Section 8, 12 U.S.C. 2607**
**UNLAWFUL KICKBACKS & FEE SHARING**

29. Escrow accounting is a settlement service which requires the servicer to collect and

---

[10] Specifically, each affirmative representation and failure to correct the false continuing misrepresentation/ concealment is cross pled as KCPA relating to pecuniary damages for each of the 36 months preceding 2-14-19.

[11] U.S. Bank is publicly traded and appears to desire to increase accounts for reporting, similar to the Wells Fargo scandal and to control more funds as a cheap source of money for U.S. Bank for lending and other business benefits.

Cross Reference to the KCPA violations in the alternative and as unconscionable per se when engaging in statutorily prohibited conduct.

make payments on behalf of the Schneiders as part of the Mortgage contract.

30. The Schneider Mortgage loan expressly requires compliance with RESPA.

31.     U.S. Bank violates the prohibition of kickbacks in loan settlement services when collecting pay by phone fees and electronic payments through computers which are split with Western Union which is incident to collecting and distributing escrow payments (i.e. Home Owners Insurance and Real Estate Taxes.

32.     Rather than the actual cost of the service, U.S. Bank inflates the cost to cover payroll expenses and computer /software charges which are not charges[13] allowed to be passed on to the borrower under the debt instruments.

33.     U.S Bank has at some times has charged $5.00 and other times $11.00 and up to $15.00, all of which were violation of the kickback provision because, in part, they were not related to the true cost of the service and included undisclosed fee sharing as well as exchange of things of value.[14]

34.     U.S. Bank engages in fee sharing attempting to hide the relationship and profits made by *falsely stating the cost is what is charged by Western Union* (both oral and in writing)[15]

35.     The misrepresentations are to mislead consumers into believing that US Bank is not charging the fee, that the fee is what the service costs, yet the actual service of electronic transfers by phone or computer *is less than 1 cent*.

36.     U.S. Bank engages in prohibited upcharges that have no relation to the real costs

---

[13] Cross Reference to the FDCPA
[14] July 2018, US Bank Representative Testified Relating Software Development by Western Union and the use of some of the split fees for cost of customer service representative time.
[15] Cross reference as the concealment of WU and as part of the scheme to increase profits by deception.

6

of online self service payments.

37. U.S. Bank charges $5.00 for homeowners to have the "convenience" of online payments *which are cheaper for U.S. Bank* than mailing a check.  In fact, U.S. Bank is forcing extra revenue by making a consumer choose between charges when coming close to the time for a payment to be assessed a late charge rather than allowing the customer to remit and avoid.

38. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for rendering of a service

39. The Plaintiffs have been damaged as a loss of proper equity having their remitted funds diverted from proper principal payments to prohibited payments that did not go to the source stated, and had no relationship to the true cost of the service as upcharges; therefore suffered pecuniary damages which entitle the Plaintiffs to refund, statutory penalties, and fees.

## COUNT 4[16]

### VIOLATIONS of 12 C.F.R. 1026.36[17]
### (Payment Posting Rule)

40. 12 C.F.R. 1026.36 requires mortgage servicers to post payments as of the date they are received.

41. The Plaintiffs have made extra principal payments during the course of the loan[18] and specifically during the last 12 months[19].

42. For example, when making the October 2019 payment, U.S. Bank segregated the payment and applied the scheduled principal and interest to the October 2019 payment, yet on

---

[16] Western Union and US Bank both or in the alternative.

[17] Each statutory violation is cross-applied to the Kansas Consumer Protection Act.

[18] All applicable statute of limitations apply for extra principal payments or posting late conduct for 5 years as breach of contract at §2, for 3 years as KCPA as pecuniary damages resulted from servicing practices.

the statement applied the extra $25.00 to the November 2019 payment a month later which resulted in more interest being paid in November than would have been due had the payment been properly applied to reduce the principal balance.

43. When making the extra principal payments with the regular payment for that month, U.S. Bank segregates the payment and applies it to the *next* month's scheduled principal and interest rather than the month it is made.

44. By segregating the extra principal payments to apply in the next month, WU and/or U.S. Bank skims what appears to be small interest on one loan which adds up to larger sums by virtue of violating the law designed to protect homeowner consumers as to this exact servicing misconduct.

45. The conduct violates the Truth in Lending Act and as such, the Plaintiffs have suffered pecuniary damages, are entitled to twice the amount of the finance charge with a refund and statutory penalties with attorney fees, costs, and expenses.

## COUNT 5 : MORTGAGE SERVICING FRAUD & CONSTRUCTIVE FRAUD[20]

46. U.S. Bank and WU either independently or in concert, engaged in designing a scheme to charge excess fees for profit when engaging in an agreement to increase revenue each for themselves or shared with the other.

47. In part, to do this, servicing software was intentionally developed or intentionally altered, to combine both systems so that WU and US Bank could hide one behind the other and avoid transparency to increase fees and fee sharing.

48. In part, to do this, servicing software was intentionally developed or intentionally altered to apply payments incorrectly to skim additional unearned interest by posting payments

---

[20] WU and US Bank individually or together

late rather than in accordance with the federal law and the loan contract as to the application of payments when received.

49. In part to do this either, both, or another unknown entity creates mortgage statements which appear official and as automated the Schneiders and other borrowers have relied on the statements to their detriment when remitting funds believing the balance on each statement is what was owed.

50. The Schneiders have been damaged by the conduct because they have been deceived into overpaying, losing home equity by a higher balance on their Nortonville home, and have been forced to bring the action to stop the conduct of nickel and diming which adds up to millions over time considering the numbers of loan.

## COUNT 6:  NEGLIGENCE PER SE

51. U.S. Bank is one of the largest home loan servicers in the United States.

52. Alternatively, Western Union is one of the largest home loan servicers in the United States as providing the servicing, including posting payments, for U.S. Bank.

53. As a home loan servicer, the Defendants are required to comply with all mortgage laws and engage in truthful non-deceptive practices[21].

54. Defendants intend to collect excess interest when applying the setting to the servicing software to apply the principal payments to the next month's payment rather than the current month the payment was received.

55. Defendants intends to overcharge when hiding fee sharing and calling charges the cost of the pay by phone or the pay by computer when in fact it is used in part to hide the sharing and enrich both WU and US Bank in their business relationships.

---

[21] Including UDAAP (Unfair Deceptive or Abusive Acts or Practices) and the KCPA (Kansas Consumer Protection Act)

9

56. Both Defendants intend to hide the overcharges, kickbacks, and other deceptive acts through a pattern of concealment, misrepresentations, and outright falsehoods when stating that these are the actual costs by Western Union and /or the Federal Reserve.

57. Violation of any of the statutes, all of which are intended to protect the Schneiders and those like situated, is a breach of statutory duty.

58. The breach of duty and conduct in violation of the statutes has foreseeably caused damage to the right to receive truthful accurate information, accounting and foreseeably resulted in pecuniary losses to the Schneiders and others.

## COUNT 7[22]

### Breach of Contract with Breach of Good Faith & Fair Dealing and Common Law Action for Accounting

59. The Schneiders and US Bank are in contract with the ultimate fruits being an exchange of the time value of money in exchange for a deed to the Nortonville property free of the encumbrance of lien.

60. The contract includes and provides that the cost of servicing is included in the rate of interest rather than a separate charge which was then breached when being sur-charged for time to speak to customer service representatives and other fee sharing which was not expressly provided for in the debt instrument.

61. The contract includes specific payment application which has been breached by failing to post in accordance with §2 of the Mortgage when posting extra principal later also in breach of the express right to make extra principal payments which were intended by the Schneiders to reduce the amount of interest ultimately paid as well as obtaining title free of encumbrance earlier.

---

[22] US Bank as the responsible entity for any agent either WU or other servicer, sub-servicer.

62. The contract contemplated statutory compliance with RESPA defined as 12 USC 2601 et seq and implementing regulation, Regulation X, 24 CFR Part 3500 and or any additional regulations that govern the same subject manner.

63. When violating the text and spirit of the regulations, including but not limited to imposing charges to collect funds for escrow administration, US Bank has breached the duty of good faith and fair dealing.

64. In addition, or in the alternative, by imposing charges which were not contemplated by the contract which sets forth a variety of additional possible charges, good faith and fair dealing has been breached.

65. All interest overcharges and fees imposed are overcharges which ultimately deprive the Schneider of their funds adding additional time to pay leaving their home predictably encumbered longer.

66. The Schneiders have been damaged as a loss of proper equity and therefore seek to have the loan accounting created with the overcharged interest reduced as a refund which should post as of the date so that the rolling forward of a higher principal balance is remedied.

67. Each occurrence of each act is cross pled as a separate cause of action under the KCPA.

## COUNT 8
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
## 50-623 seq.

68. Kansas law prohibits deceptive acts and practices in consumer transactions whether or not the company deals directly or indirectly with the consumer.

69. U.S. Bank is a supplier of home loans and covered by the Kansas Consumer Protection Act (KCPA) as providing services relating to a consumer transaction.

70. U.S. Bank is a home loan servicer and as such covered by the KCPA.

71. U.S. Bank is a provider of ACH services through the Federal Reserve.

72. Western Union is a servicer for US Bank Home Loans and elects how to apply loan payments.

73. Western Union is a provider of payment processing utilizing the Federal Reserve

74. Amy Schneider is an individual and a consumer who sought or acquired the services of the Defendants for her personal and family purposes

75. Randall Schneider is a disabled, elderly individual and a consumer who sought or acquired the services of the Defendants for his personal and family purposes.

76. Amy Schneider is aggrieved by conduct that violates the text and spirit of the contract, the law, and by deprivation of the right to know truthful accurate information all which resulted in damage with pecuniary harm related to the concealments, overcharges, and unearned fees for example.

77. Likewise, Randall Schneider is aggrieved by conduct that violates the text and spirit of the contract, the law, and by deprivation of the right to know truthful accurate information all which resulted in damage with pecuniary harm related to the concealments, overcharges, and unearned fees for example.

78. The Schneiders assert the proposition that after the first overcharge or unearned fee that *all* subsequent demands are inaccurate and create pecuniary damages which increase over time.

**COUNTS 8-48[23]**

**COUNTS 48-88[24]**

79. U.S. Bank acted *knowingly*, and/or with *reason to know*, *willfully*, and /or intentionally with disregard to the rights of consumers when violating the Act.

---

[23] 36 months of deceptive acts and practices in advance of February 14, 2020 and each month continuing as to Amy S.
[24] 36 months of deceptive acts and practices in advance of February 14, 2020 and each month continuing as to Randall S. 6 months of deceptive acts and practices as to Randall S.

80. U.S. Bank violated K.S.A. 50-626(b)(1)(A), (D), and/or (F) when engaging in overcharges and unearned or overstated fees of each type, each kind, and each time.

81. U.S. Bank and WU violated K.S.A. 50-626(b)(2) when engaging of exaggeration, falsehood, innuendo or ambiguity as to a material fact; including but not limited to:

   a. the amount due and posting on the statements,

   b. the letters including stating a certain amount would be withdrawn which was less than the amount withdrawn,   Specifically, as described by the CFPB, advising an amount would be withdrawn in letter confirmations from WU, yet a higher amount was withdrawn from the bank account.

   c. ambiguity in the use of a suspense account which enabled late posting and reversing of posting as an avenue to post late contrary to federal law and the contract.

82. U.S. Bank and WU violated K.S.A. 60-626(b)(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact; as to each already pled, those that are continuing, and have yet to be discovered.

   a.  Each that appears, or does not appear on the mortgage statements;

   b. Falsehoods relating to the charges being those of Western Union rather than being set by U.S. Bank with kickbacks and fee sharing as the purpose for the concealment.

   c. Concealment of the role of Western Union being the entity doing the servicing rather than the ACH conduit.

   d. Concealing or omitting, for example that US Bank is part of a network of banks that allow bill pay transfers to occur at zero cost through Zelle which is omitted from the payment options.

   e. Concealing or omitting that the US Bank handles more ACH transfers than Western Union, in fact does not need Western Union to transfer money for the payments through the federal reserve which cost less than 1 cent rather than $5.00 -$15.00.

   f. Concealing that the cost on other accounts offered to other types of customers is zero for pay by phone or pay by computer fees.

83. U.S. Bank and WU violated K.S.A. 50-626(b)(7) when making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of prices of competitors or one's own price at a past or future time as to payment processing charges.

    a. Upon reasonable inference then suppressing the information that WU uses the fees to create revenue to pay US Bank for use of lobby space and WU locations as some fees for US Bank mortgage customers are higher than non US Bank customers using electronic fund transfers.

84. U.S. Bank violated K.S.A. 50-636(b)(8) when falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer obligations for the Schneiders to pay at a rate declared unlawful; and that Western Union charges the amounts for the payment fees.

85. U.S. Bank violated the KCPA on every call relating to payments during the last 3 years.

86. U.S. Bank violated the KCPA each and every month when they, or their agent, mailed statements to the Schneiders.

87. U.S. Bank is responsible for every statutory failure, every omission, every concealment and as such has necessitated their retention of Counsel causing pecuniary damages.

## **VIOLATIONS OF KSA 50-627[25]**

88. Deceptive acts and practices are unconscionable.

89. U.S. Bank used their unequal bargaining power and control over Amy's and Randy's constitutionally protected homestead to engage in violations of the foregoing statutes.

---

[25] 40 months of deceptive acts and practices as to Amy S.and 40 months of deceptive acts and practices as to Randall S

The totality and continuation in addition to the refusal to offer any self-correction practices particularly after the years of oversight in the mortgage foreclosure crisis and consent orders.

90. Every month of charging statutorily prohibited usurious rates is predatory and unconscionable.

91. Continuing the conduct despite being aware that there were issues is unconscionable when doing nothing to lower the rate, change practices, or refund any money.

92. Using the predictable cost of legal action in excess of the value of the overcharges as leverage is unconscionable.

93. Engaging in acts and practices which violate the letter or spirit of the law are per se unconscionable as not only deceptive, but unlawful.

94. Randy Schneider is both disabled and elderly therefore entitled to the enhanced penalties under the KCPA.

## RESPONDEAT SUPERIOR

The acts of the employees, officers, and agents, are imputed to the Defendants in their individual and joint capacity under the theory of Respondeat Superior.

## RESERVATION TO AMEND THE PLEADING TO COMPORT TO THE EVIDENCE

Subject to the full extent allowed by the law, equity, the Kansas Rules of Civil Procedure, and this Court, the Defendants are on notice that additional counterclaims may be raised under the common law as well as statute. Certain information is outside the control of the Plaintiffs and expected to be the subject of discovery. Specifically those things that are not within the knowledge and control or are not certain at this time are subject to amendment upon further information.

## RELATION BACK AMENDMENT

The Schneiders expressly claim relation back amendment for the purpose of this Complaint and any subsequent amendments filed by rule or leave.

## PRAYER FOR RELIEF

The Schneiders, as individuals each in their individual capacity, seek this Court's powers to order a full accounting, refunds, and other relief which include all of the following in a total amount in excess of $75,000.;

(1). Find U.S. Bank charged a usurious fixed rate of 6.1% on the Kansas mortgage contract when K.S.A. 16-207(b) limited the maximum interest rate on the loan to at the time to 5.58%;

(2) Find U.S. Bank breached the Kansas mortgage contract and duty of good faith and fair dealing; when applying payments in breach of Section 2 which increased the interest due from the Schneiders;

(3) Find that both Defendants were servicers who engaged in statutory violations with a separate statutory penalty for each separate act and statement for Amy Schneider as an aggrieved induvial:

(4) Find that both Defendants were servicers who engaged in statutory violations with a separate statutory penalty for each separate act and statement for Randall Schneider as an aggrieved induvial:

(5) Award enhanced penalties to Randall Schneider as a disabled and elderly individual under the KCPA.

(6)  Award the Plaintiffs damages for their expenses, costs, losses, pecuniary damages, and attorney fees in an amount to be determined after further discovery;

(7). Order such other injunctive relief as is deemed equitable, just, and proper under the circumstances including an injunctive relief for Kansas consumers under the KCPA.

(8). Find the Defendants engaged in fraud and/or was negligent per se and a remedy including prospective relief to pay their attorney to continue to monitor the account and protect the Schneiders from the Defendant and their tactics; .

(9) Order punitive damages as deterrence for the failure to address concerns brought in advance of the suit considering the disparity in wealth of the parties; the continued failures in servicing by US Bank which is addressed, in part, by the OCC Consent Orders; the decision to continue charging fees in excess of Kansas law and after warning by the CFPB; knowingly servicing a loan which applies principal payments to the next month by extra contractual and improper use of suspense accounting in an effort to increase profits by design impact being dramatic as to all borrowers as compared to a single borrower;

(19) Any other relief this Court deems just and necessary including, but not limited to an Order to cease and desist these practices.

**DEMAND FOR JURY TRIAL**              **Respectfully Submitted**,

/s/ Donna L. Huffman
Donna L. Huffman (#23324)
The Law Office of Donna L. Huffman
P.O. Box 1, 303 Jefferson Street
Oskaloosa, Kansas 66066
Ph:   (785) 840-5259
dhuffmanlaw@aol.com

**CERTIFICATE OF SERVICE**

This certifies that on this 7th day of May 2020, the forgoing motion was sent via the ECF delivery system to all Counsel of record in the matter.

By: /s/ Donna L. Huffman



KRIS W. KOBACH  
Secretary of State

STATE OF KANSAS

Memorial Hall, 1st Floor  
120 SW 10th Avenue  
Topeka, KS 66612-1594  
(785) 296-4564  
www.sos.ks.gov

**Kansas Usury Rate**

|  | 2013 | 2012 | 2011 | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 | 1996 | 1995 | 1994 | 1993 |
|---:|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January | 4.42% | 5.02% | 6.11% | 6.47% | 6.30% | 7.41% | 7.57% | 7.56% | 7.13% | 7.20% | 7.07% | 8.64% | 8.78% | 9.71% | 8.29% | 8.75% | 9.54% | 8.74% | 10.95% | 8.76% | 9.62% |
| February | 4.60% | 4.93% | 6.09% | 6.33% | 6.51% | 7.04% | 7.72% | 7.57% | 6.97% | 7.15% | 7.16% | 8.36% | 8.50% | 10.09% | 8.21% | 8.60% | 9.54% | 8.65% | 10.66% | 8.47% | 9.20% |
| March | 4.59% | 4.96% | 6.16% | 6.25% | 6.53% | 7.36% | 7.48% | 7.58% | 7.07% | 6.95% | 6.98% | 7.91% | 8.48% | 9.73% | 8.67% | 8.64% | 9.55% | 9.21% | 10.15% | 8.95% | 8.97% |
| April | 4.60% | 5.11% | 6.16% | 6.37% | 5.92% | 7.16% | 7.55% | 7.82% | 7.42% | 6.91% | 7.02% | 8.59% | 8.51% | 9.88% | 8.63% | 8.69% | 9.87% | 9.59% | 10.22% | 9.78% | 8.99% |
| May | 4.43% | 4.90% | 6.01% | 6.36% | 6.09% | 7.42% | 7.58% | 7.96% | 7.13% | 7.50% | 6.94% | 8.21% | 8.71% | 9.87% | 8.62% | 8.55% | 9.79% | 9.80% | 10.06% | 10.17% | 8.98% |
| June | 4.93% | 4.74% | 5.85% | 6.12% | 6.53% | 7.59% | 7.79% | 8.05% | 7.01% | 7.72% | 6.38% | 8.10% | 8.63% | 10.08% | 8.97% | 8.57% | 9.64% | 10.01% | 9.40% | 10.24% | 9.06% |
| July | NA | 4.49% | 5.87% | 5.74% | 6.58% | 7.72% | 8.07% | 8.22% | 6.99% | 7.61% | 6.62% | 8.05% | 8.78% | 9.70% | 9.24% | 8.56% | 9.44% | 9.80% | 9.42% | 10.32% | 8.65% |
| August | NA | 4.30% | 5.77% | 5.58% | 6.57% | 7.82% | 8.06% | 7.97% | 7.16% | 7.46% | 7.48% | 7.93% | 8.42% | 9.70% | 9.55% | 8.56% | 9.05% | 9.88% | 9.52% | 10.12% | 8.64% |
| September | NA | 4.32% | 5.30% | 5.37% | 6.47% | 7.68% | 7.83% | 7.78% | 7.12% | 7.13% | 7.58% | 7.51% | 8.30% | 9.51% | 9.69% | 8.31% | 9.21% | 9.94% | 9.38% | 10.17% | 8.31% |
| October | NA | 4.10% | 5.03% | 5.57% | 6.21% | 7.40% | 7.70% | 7.58% | 7.31% | 7.09% | 7.02% | 7.24% | 8.02% | 9.34% | 9.44% | 8.01% | 9.03% | 9.78% | 9.39% | 10.50% | 8.38% |
| November | NA | 4.34% | 5.18% | 5.46% | 6.33% | 7.93% | 7.59% | 7.63% | 7.63% | 7.02% | 7.33% | 7.24% | 7.62% | 9.35% | 9.43% | 8.09% | 8.94% | 9.44% | 9.18% | 10.68% | 8.34% |
| December | NA | 4.25% | 5.12% | 5.69% | 5.96% | 6.87% | 7.31% | 7.47% | 7.64% | 7.15% | 7.28% | 7.43% | 8.23% | 9.06% | 9.56% | 8.24% | 8.91% | 9.22% | 8.93% | 10.97% | 8.79% |