IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**AMY and RANDALL SCHNEIDER,**

    **Plaintiffs,**

    v.

**U.S. BANK, N.A. and WESTERN UNION FINANCIAL SERVICES, INC.,**

    **Defendants.**

Case No. 20-2162-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiffs Amy and Randall Schneider assert federal and state-law claims against U.S. Bank, N.A. ("USB") and Western Union Financial Services, Inc. ("WU") arising out of their mortgage loan from USB. Before the Court is USB's Motion to Dismiss First Amended Complaint (Doc. 12). The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants in part and denies in part USB's motion.

**I.    Standard**

USB moves to dismiss under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face."[1] In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

Finally, if the Court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[10]  However, the Court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* at 679.

[8] *Id.*

[9] *Id.* at 678.

[10] Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

parties do not dispute their authenticity.[11]  Here, the Court considers the mortgage contract attached to USB's motion to dismiss because it is central to the claims asserted in this matter.[12]

## II.     Factual Allegations

The following material facts are alleged in the First Amended Complaint ("FAC") or taken from the mortgage contract attached to the motion to dismiss.  The facts alleged in the FAC are assumed to be true for purposes of deciding this motion unless directly contradicted by the mortgage.

On August 2, 2010, Plaintiffs Amy and Randall Schneider signed a contract allowing them to take out a mortgage loan from USB, securing a note on their property in Nortonville, Kansas.  The contract is on a pre-printed form that indicates on the bottom of each page, "KANSAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT."[13]

Paragraph 2 of the mortgage provides:

> Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
>
> If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full

---

[11] *See Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[12] *See* Doc. 13-1.

[13] *Id.*

3

> payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.  Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.[14]

The mortgage is governed by "federal law and the law of the jurisdiction in which the Property is located."[15]  On the date the mortgage was secured, the maximum interest rate in Kansas was 5.58%.  The Schneiders pay USB a 6.1% interest rate on their mortgage loan.

When making online payments, USB borrowers are required to leave the USB website and are directed to Defendant WU's website.  WU charges fees to borrowers who make payments by phone and online.  These fees are split between USB and WU and are not related to the true cost of service.  USB and WU used servicing software to hide behind one another and avoid transparency in charging these phone and online payment fees.  Either USB or WU or both use this software to post payments late, and therefore create mortgage statements that do not accurately reflect the balances owed.

The Schneiders made extra principal payments during the course of their loan, specifically over the last twelve months.  Rather than apply the extra payments to principal, USB segregated each extra payment and applied it to the following month's scheduled payment.  For example, the Schneiders paid an extra $25 in October 2019.  USB applied the extra $25 to the Schneiders November 2019 payment, rather than to the principal.  This practice allowed USB to collect more interest in November.

---

[14] *Id.* ¶ 2.

[15] *Id.* ¶ 16.

### III. Discussion

Plaintiffs allege the following claims for relief in the FAC: (1) Usury Violations under Kansas law; (2) violations of the Fair Debt Collection Practices Act ("FDCPA"); (3) unlawful kickbacks and fee sharing under the Real Estate Settlement and Procedures Act ("RESPA"); (4) a violation of the Truth in Lending Act ("TILA"); (5) fraud; (6) negligence per se; (7) breach of contract; and (8) violations of the Kansas Consumer Protection Act ("KCPA").  USB moves to dismiss all claims, and the Court addresses them each in turn.

#### A. Kansas Usury Rate

Count 1 alleges a violation of K.S.A. § 16-207(b) for charging an allegedly usurious interest rate.  USB argues that because it is a national banking association, it is not subject to Kansas usury laws, thus Count 1 must be dismissed.  Under the National Banking Act ("NBA"), a national bank is allowed to export the maximum interest rate it could have charged in its home state to the state where the loan is originated.[16]  "The NBA preempts actions challenging the lawfulness of the interest charged by a national bank."[17]  This provision supersedes "state usury laws and create[s] a federal remedy for overcharges that is exclusive, even when a state complainant . . . relies entirely on state law."[18]  USB is a national bank and thus, the NBA and not Kansas usury law applies here.  Thus, USB's motion to dismiss Count 1 is granted.[19]

#### B. FDCPA Claims

---

[16] 12 U.S.C. § 85; *see Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 737 (1996).

[17] *Phipps v. FDIC*, 417 F.3d 1006, 1011 (8th Cir. 2005).

[18] *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003)).

[19] The Schneiders' argument that the Court can reasonably infer that the Kansas Mortgage Company is the originator of their home loan based on their allegation that they "applied for a home loan under the Kansas Mortgage Act" is not well taken.  The mortgage clearly identifies USB as the original lender.

Count 2 alleges violations of the FDCPA because Defendants unlawfully collected fees for phone or online payments that were not authorized by the debt agreement, collected interest in excess of the debt agreement, and used false, deceptive, or misleading representations in order to collect a debt.  Assuming the Schneiders defaulted on their loan, which they do not plead, USB argues that its interest in the loan predates any default, thus it is not a "debt collector" and cannot be liable under the FDCPA.

As the Tenth Circuit recently explained, "[t]he FDCPA excludes 'any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person.'"[20]  Congress did not intend for the FDCPA to cover mortgage service companies.[21]  The Schneiders allege in the FAC that USB "has always serviced the Schneiders' real estate loan secured by their real property."[22]  Moreover, they do not allege that they were in default. Therefore, assuming as true the facts alleged in the Complaint, USB is not a debt collector subject to liability under the FDCPA.

The Schneiders' arguments to the contrary are unavailing and difficult to follow.  First, they argue that because they did not allege USB was the originator of the loan, USB may not assert itself as such.  The Court rejects this baseless argument as contradicted by the Schneiders' allegation that USB has "always serviced the mortgage," and the mortgage contract itself shows that USB is the original lender.  Next, the Schneiders suggest that USB's use of interstate commerce to collect payments somehow creates liability as a debt collector under § 1692a(6), but this fails to address the provision in subsection (F) that explicitly excludes from the

---

[20] *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1219 (10th Cir. 2018) (quoting 15 U.S.C. § 1692a(6)(F)).

[21] *Id.* (citing S. Rep. No. 95-382, at 3–4 (1977)).

[22] Doc. 10 ¶ 2.

6

definition of "debt collector" any person who attempts to collect a debt when there was no default at the time the debt was obtained.

Finally, the Schneiders argue that USB should be liable for the conduct of WU under a respondeat superior theory. They argue that USB "uses [its] own name to hide the relationship with Western Union that in deposition Western Union is claimed to be the actual servicer," and collects fees "under the guise that the cost is being collected for Western Union."[23] But a "debt collector" under the FDCPA includes a person "who uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."[24] Because the Schneiders explicitly allege that USB uses its own name to collect mortgage payments, this provision does not apply.[25] Moreover, assuming FDCPA liability can attach under a vicarious liability theory, the Schneiders fail to allege an agency relationship between USB and WU sufficient to give rise to such liability.[26] USB's motion to dismiss Count 2 is granted.

### C. RESPA

Count 3 alleges a violation of RESPA based on USB's alleged fee-sharing with WU in servicing the mortgage loan. The Schneiders contend that this fee-sharing arrangement is an illegal kickback prohibited by 12 C.F.R. § 1024.14 and 12 U.S.C. § 2607. USB moves to dismiss because those provisions do not apply to servicing fees; rather, they apply only to fees imposed at origination. The Court agrees. The statute prohibiting kickbacks and unearned fees

---

[23] Doc. 17 at 8.

[24] 15 U.S.C. § 1692a(6).

[25] *See* Doc. 13 ¶¶ 19, 25.

[26] *See Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1089 (E.D. Cal. 2013) (explaining that the principal must exercise control over the agent's conduct in order to be held vicariously liable).

7

is limited to such conduct "incident to or a part of a real estate settlement service involving a federally related mortgage loan."[27]  "Settlement services" is defined as:

> any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement . . . .[28]

USB is correct that fees incurred post-settlement are not covered by § 2607.  The Department of Housing and Urban Development's regulations define "settlement" as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan.  This process may also be called 'closing' or 'escrow' in different jurisdictions."[29]  And "[e]very case to consider directly the meaning of 'settlement services' has read the term as so limited.[30]  Therefore, assuming as true that USB and WU charged unearned fees or kickbacks when collecting the Schneiders' mortgage payments, because such fees were not incurred as part of USB's settlement services, § 2607 does not apply and Count 3 must be dismissed.

    **D.**    **TILA**

---

[27] 12 U.S.C. § 2607(a).

[28] 12 U.S.C. § 2602(3).

[29] 12 C.F.R. § 1024.2(b).

[30] *See Molosky v. Wash. Mut., Inc.*, 664 F.3d 109, 118 (6th Cir. 2011) (collecting cases).

In Count 4, the Schneiders allege a violation of the payment posting rule, 12 C.F.R. § 1026.36, a regulation promulgated under TILA. Under § 1026.36(c)(1)(i) governing periodic payments:

> No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.

The following subsection governing partial payments provides that

> [a]ny servicer that retains a partial payment, meaning any payment less than a periodic payment, in a suspense or unapplied funds account shall:
>
> (A) Disclose to the consumer the total amount of funds held in such suspense or unapplied funds account on the periodic statement as required by § 1026.41(d)(3), if a periodic statement is required; and
>
> (B) On accumulation of sufficient funds to cover a periodic payment in any suspense or unapplied funds account, treat such funds as a periodic payment received in accordance with paragraph (c)(1)(i) of this section.[31]

The Schneiders allege that USB violated § 1026.36 by not posting their extra payments on the date they were received and by holding the extra principal payment until the following month, thereby skimming interest on the loan. The example they provide is their October 2019 monthly payment that included an extra $25—USB "segregated" that payment, applied the regular payment in October 2019, and held back the extra $25 and applied it to November. The Court

---

[31] 12 C.F.R. § 1026.36(c)(1)(ii).

9

agrees that the facts as alleged do not demonstrate a violation of this regulation. The October 2019 payment was "periodic payment" under the rule because it was an amount sufficient to cover principal, interest, and escrow for that billing cycle. Under § 1026.36(c)(1)(ii), USB treated the extra payment as a partial payment for the following month and held it as such.

The Schneiders argue that USB violated the rule by not posting the extra payment on the date of receipt. But as described above, this practice would not violate the payment posting rule because they did post the periodic payment on time. USB treated the extra $25 as a partial payment on the following month's payment that was less than a periodic payment. In sum, the Schneiders do not allege a plausible claim for relief under the payment posting rule.

### E.    Fraud and KCPA Claims

Count 5 is entitled "Mortgage Servicing Fraud & Constructive Fraud" and alleges that Defendants either independently or together designed a scheme to charge excess fees for profit and hide behind one another to avoid fee transparency. Count 8 alleges claims under the KCPA for unconscionable and deceptive acts and practices.[32]

#### 1.    Rule 9(b)

Pursuant to Fed. R. Civ. P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This provision also "applies to allegations of deceptive trade practices under the KCPA."[33] Thus, to survive a motion to dismiss, an allegation of fraud or deceptive practices under the KCPA "must 'set forth the time,

---

[32] The Schneiders actually allege Counts 8–88 under the KCPA: Counts 8–48 represent "36 months of deceptive acts and practices in advance of February 14, 2020 and each month continuing as to Amy S.," and Counts 4[9]–88 based on the same calculation as to Randall Schneider. Doc. 10 at 12 nn.23–24. For purposes of this Order, the Court addresses these counts by reference to Count 8.

[33] *Thompson v. Jiffy Lube Int'l Inc.*, 505 F. Supp. 2d 907, 930 (D. Kan. 2007) (citing *In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003)).

place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[34]

USB argues that the FAC does not allege any false statement of fact made to the Schneiders that would support a common-law fraud claim. USB also argues that the Schneiders' KCPA allegations are vague, ambiguous, and conclusory. The Court agrees. On the fraud claim, the Schneiders identify "mortgage statements which appear official," when in fact they inaccurately reflect the balance due. But this is insufficient under Rule 9(b) because the Schneiders fail to specifically identify the time, place, or contents of the alleged misrepresentation or the identity of the person making the misrepresentation.

Similarly, the Schneiders fail to plead their KCPA claims with the requisite particularity. They allege violations of several subsections of the provision barring deceptive acts and practices. Under § 50-626(b)(1)(A), they assert that USB engaged in overcharges and unearned or overstated fees "of each type, each kind, and each time."[35] This conclusory and generic assertion is insufficient under Rule 9(b). The Schneiders allege violations of subsection (b)(2) for engaging in "exaggeration, falsehood, innuendo or ambiguity as to a material fact," and list three examples in paragraph 81. But none of these examples are pled with the requisite particularity. They reference the incorrect amounts due and posting on "the statements," but fail to identify the particular statements they claim are false, when they were issued, or by whom. They cite letters stating a certain amount would be withdrawn, but fail to identify the amounts, dates or substance of the letters. And they identify "ambiguity in the use of a suspense account"

---

[34] *Id.* (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)).
[35] Doc. 10 ¶ 80.

but fail to specify how the ambiguity was created, by whom, and when. Thus, the Schneiders § 50-626(b)(2) allegations fall short of alleging a plausible claim.

The Schneiders also allege a violation of subsection (b)(3) for "willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact; as to each already pled, those that are continuing, and have yet to be discovered."[36] As an initial matter, the Court notes that the Schneiders cannot state a plausible claim under the KCPA for deceptive acts and practices that have not yet been discovered. Such an allegation plainly does not meet Rule 9(b). The Schneiders' specific examples also fall short of the Rule 9(b) pleading standard. Stating that falsehoods or material omissions appear on "mortgage statements" is insufficient. Moreover, the remaining examples of falsehoods or concealments wholly fail to identify the who, what, when, and where of the fraud. Accordingly, the Schneiders fail to plead facts sufficient to state a plausible claim under § 50-626(b)(3). For the same reason, the Schneiders' conclusory and generic assertions under subsections (b)(7) and (b)(8) fail to state a plausible claim under the KCPA.

Finally, the Schneiders claim that Defendants committed unconscionable deceptive acts and practices under § 50-627. Whether conduct is unconscionable under the KCPA is a legal question decided by the Court.[37] "An unconscionable act or practice requires both supplier deception and unequal bargaining power."[38] In determining whether an act is unconscionable, the Court should consider a statutory list nonexhaustive circumstances "of which the supplier knew or had reason to know."[39]

---

[36] *Id.* ¶ 82.

[37] K.S.A. § 50-627(a); *Via Christi Reg. Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 867 (Kan. 2013).

[38] *Via Christi*, 314 P.3d at 867 (citing *Kansas ex rel. Stovall v. ConfiMed.com*, 38 P.3d 707, 714 (Kan. 2002)).

[39] K.S.A. § 50-627(b).

The Schneiders' factual allegations fail to support a plausible claim under § 50-627 under both Rules 9(b) and 12(b)(6). Paragraphs 88–94 constitute either legal conclusions not entitled to a presumption of truth under *Iqbal*, or duplicate allegations that the Court has already rejected as either preempted or too generic to support a claim for relief under the KCPA. Accordingly, the Schneiders' claims based on unconscionable conduct under the KCPA must be dismissed for failure to plead sufficient factual conduct that would give rise to a plausible claim for relief.

### 2. Legal Challenges to KCPA Claims

In addition to its Rule 9(b) arguments, USB moves to dismiss certain KCPA claims on the following legal grounds: (1) any claims arising before July 1, 2019, must be dismissed because USB does not meet the definition of "supplier" under the Act and therefore cannot be liable; and (2) convenience fee and interest rate charges are not actionable under the KCPA. For the same reasons identified in well-reasoned decisions by Judge Crow and Judge Teeter in another case brought by the Schneiders in this district,[40] USB's first argument is well taken. The KCPA prohibits "suppliers" from engaging in deceptive and unconscionable acts and practices in connection with a "consumer transaction."[41] To the extent the Schneiders allege claims that accrued before July 1, 2019, USB does not meet the KCPA's definition of "supplier." Before that date, "a bank is excluded as a supplier under the nomenclature and reach of the KCPA if the bank is generally subject to regulations pertaining to the disposition of repossessed collateral."[42] The Court rejects the Schneiders' argument that the July 1, 2019 KCPA amendment was merely

---

[40] *Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2018 WL 4491244, at *3–8 (D. Kan. Sept. 19, 2018); No. 13-4094-HLT, 2019 WL 3731909, at *2 (D. Kan. Aug. 8, 2019). The case was originally assigned to the Honorable Sam Crow. It was reassigned to the Honorable Holly Teeter on October 12, 2018.

[41] K.S.A. §§ 50-626–27.

[42] *Schneider*, 2019 WL 3731909, at *2 (discussing K.S.A. § 50-624(l) (2018)). The Kansas legislature amended the definition by deleting this exclusion effective July 1, 2019. 2019 Kan. Laws. Ch. 66 § 17.

a clarification and not an amendment. As Judge Teeter aptly explained in the Schneiders' case against CitiMortgage, Inc., the deletion of regulated national banks from the KCPA's definition of supplier operates prospectively.[43] Although USB may meet the definition of supplier for conduct that accrued on July 1, 2019 or thereafter, USB cannot be liable under the KCPA for conduct that accrued prior to July 1, 2019, and any such claims are dismissed.

USB also argues that KCPA claims based on convenience charges or the loan's interest rate are not actionable under the KCPA because they are expressly permitted under the NBA, which preempts any contrary state law. The Schneiders respond that the NBA does not expressly preempt KCPA claims and they distinguish the caselaw cited by USB. For the reasons already discussed above, the Schneiders' usury rate argument is preempted by the NBA. Additionally, regulations promulgated by the Office of Comptroller of the Currency ("OCC") pursuant to the NBA expressly allow certain fees by national banks and govern disclosure obligations regarding those fees. 12 C.F.R. § 7.4002(a) provides that "[a] national bank may charge its customers non-interest charges and fees, including deposit account service charges." And subsection (b)(2) of that regulation provides that: "The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." Finally, 12 C.F.R. § 34.4 governs national banks' disclosure obligations for costs they incur as part of real estate loans.[44]

---

[43] *Id.* (citing 2019 Kan. Laws. Ch. 66 § 17); *see also Jones v. Fay Serv., LLC*, No. 19-1124-EFM, 2020 WL 569771, at *6 (D. Kan. Feb. 5, 2020).

[44] 12 C.F.R. § 34.4(a)(9) ("A national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning . . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents . . . .").

Although the NBA and OCC regulations do not "preempt the field," these regulations preempt state laws to the extent they "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers."[45] The Schneiders claim that USB's online and phone charges are too high "in context with the amount it cost to provide the service; here, a penny."[46] And they claim that these charges, and the relationship between USB and WU, were not properly disclosed to the Schneiders. Such claims are governed by the OCC regulations, which preempt any claim the Schneiders have under the KCPA based on the amount of or disclosures regarding these fees.[47]

## F.   Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Count 7 alleges a claim for breach of contract under a breach of good faith and fair dealing theory. Under Kansas law, a party establishes breach of contract by proving five elements: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."[48] "The duty of good faith assumes the existence of a contractual right; it does

---

[45] 12 C.F.R. § 34.4(a); *see Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13 (2007) ("Beyond genuine dispute, state law may not significantly burden a national bank's own exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA.").

[46] Doc. 17 at 29.

[47] *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 556–57 (9th Cir. 2010); *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 726 (9th Cir. 2012) ("Imposing liability for the bank's failure to sufficiently disclose its posting method leads to the same result as mandating specific disclosures. Both remedies are tantamount to state regulation of disclosure requirements.").

[48] *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (citing *Commercial Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973)).

not create one."[49]  In addition to pleading breach of contract, to establish a breach of the covenant of good faith and fair dealing the Schneiders must "point to a term of the contract 'which the defendant allegedly violated by failure to abide by the good faith spirit of that term.'"[50]  "This implied duty requires the parties to an agreement to refrain from 'intentionally and purposefully do[ing] anything to prevent the other party from carrying out his part of the agreement, or do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"[51]

The Schneiders allege that USB breached the mortgage contract and its duty of good faith and fair dealing in several ways: (1) by failing to follow the payment posting provision; (2) by imposing surcharges for online and phone payments; (3) by failing to comply with RESPA; (4) by overcharging interest; and (5) by providing an improper accounting of their mortgage loan.  The Court has already determined that the Schneiders fail to state a plausible violation of RESPA, so that cannot be the basis of a breach of contract action.  Likewise, the Schneiders fail to point the Court to any provision of the mortgage contract that would render the interest rate applied an "overcharge."  Thus, USB's motion to dismiss the Schneiders' breach of contract theories based on the interest rate they were charged is granted.

The Court, however, denies USB's motion on the Schneiders' claim that it breached the payment posting provision of the mortgage.  USB correctly argues that § 2 of the mortgage says nothing about whether USB must post excess payments immediately.  However, that provision does dictate what USB is to do with "remaining amounts" of periodic payments after they are

---

[49] *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1201 (D. Kan. 2004) (quoting *Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co.*, 810 F. Supp. 1196, 1204 (D. Kan. 1992)).

[50] *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1135 (D. Kan. 2010) (quoting *Terra Venture*, 340 F. Supp. 2d at 1201).

[51] *Id.* (quoting *Terra Venture*, 340 F. Supp. 2d at 1201).

applied to regular monthly charges. They "shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note."[52] The Schneiders allege that their excess payments were held instead of applied to their principal, in contravention of this provision. A reasonable inference can also be made that if the Schneiders' excess principal payments were not properly applied, the mortgage loan accounting was also incorrect. Thus, the Schneiders' factual allegations are sufficient to state a claim for breach of contract.

### G. Negligence Per Se

Under Kansas law, negligence per se requires the following showing: "(1) a violation of a statute, ordinance, or regulation, and (2) the violation must be the cause of the damages resulting therefrom. In addition, the plaintiff must also establish that an individual right of action for injury arising out of the violation was intended by the legislature."[53] As the Court discussed above, the only claim that survives USB's motion to dismiss is a narrow claim for breach of contract. Because the Schneiders fail to state a plausible claim for statutory relief, it follows that they may not premise a negligence per se theory on any of the statutory violations pled in the FAC. As such, the Schneiders' negligence per se claim against USB must be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that USB's Motion to Dismiss First Amended Complaint (Doc. 12) is **granted in part and denied in part**. The motion is denied as to Plaintiffs' breach of contract claim based on section 2 of the mortgage contract. USB's motion to dismiss is otherwise granted.

**IT IS SO ORDERED.**

---

[52] Doc. 13-1 § 2.

[53] *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004) (quoting *Cullip v. Domann*, 972 P.2d 776, 779 (Kan. 1999)).

17

Dated: August 12, 2020

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                CHIEF UNITED STATES DISTRICT JUDGE